1  Jonathan A. Dessaules, State Bar No. 019439
   David E. Wood, State Bar No. 021403
2  Ashley C. Hill, State Bar No. 032483
   **DESSAULES LAW GROUP**
3  5353 N. 16th St., Suite 110
   Phoenix, Arizona 85016
4  Tel: 602-274-5400
   Fax: 602-274-5401
5  jdessaules@dessauleslaw.com
   dwood@dessauleslaw.com
6  ahill@dessauleslaw.com

7  E. Adam Webb
   G. Franklin Lemond, Jr.
8  **WEBB, KLASE & LEMOND, LLC**
9  1900 The Exchange, S.E., Suite 480
   Atlanta, Georgia 30339
10 (770) 444-9325
   (770) 217-9950 (fax)
11 Adam@WebbLLC.com
   Franklin@WebbLLC.com
12 (*Pro Hac Vice Application Forthcoming*)

13 *Co-Counsel for Plaintiffs*

14              IN THE UNITED STATES DISTRICT COURT

15                       DISTRICT OF ARIZONA

16
   Eileen Carr, Samuel Stanton, Jane Doe I, Jane
17 Doe II, and Jane Doe III, on behalf of              No.
   themselves and all others similarly situated,
18
                                                       **CLASS ACTION COMPLAINT**
19             Plaintiffs,

20       vs.                                           **Jury Trial Demanded**

21 Grand Canyon University, Inc., and Grand
   Canyon Education, Inc. d/b/a Grand Canyon
22 University,

23             Defendants.

24         Plaintiffs Eileen Carr, Samuel Stanton, Jane Doe I, Jane Doe II, and Jane Doe III, by and

25 through their undersigned counsel, on behalf of themselves and all persons similarly situated,

26 submit this Class Action Complaint and allege the following based on personal knowledge as to

allegations regarding Plaintiffs and on information and belief as to other allegations.

**INTRODUCTION AND PARTIES**

1.      This action seeks declaratory relief, monetary damages, and restitution from Defendants based on their improper practice of forcing doctoral students into taking unnecessary "continuation courses."  The victims of this scheme must pay, or take out loans to pay, Grand Canyon University for classes that have no value.  This also results in students having to repay their student loans when they have not finished their degree and cannot yet gain employment.

2.      Plaintiff Eileen Carr is a citizen of the State of New York who signed up for Grand Canyon University's online doctoral program.

3.      Plaintiff Samuel Stanton is a citizen of the State of Florida who signed up for Grand Canyon University's online doctoral program.

4.      Plaintiff Jane Doe I is a citizen of the State of California who signed up for Grand Canyon University's online doctoral program.  Jane Doe I has requested to proceed using this pseudonym for fear of retribution against her and her degree by Defendants.

5.      Plaintiff Jane Doe II is a citizen of the State of North Carolina who signed up for Grand Canyon University's online doctoral program.  Jane Doe II has requested to proceed using this pseudonym for fear of retribution against her and her degree by Defendants.

6.      Plaintiff Jane Doe III is a citizen of the State of Arizona who signed up for Grand Canyon University's online doctoral program.  Jane Doe III has requested to proceed using this pseudonym for fear of retribution against her and her degree by Defendants.

7.      Defendant Grand Canyon University, Inc. is an Arizona corporation registered to do business in Arizona and can be served with process via its agent InCorp Services, Inc., 8825 N 23rd Avenue, Suite 100, Phoenix, Arizona 85021.

8.      Defendant Grand Canyon Education, Inc. is the publicly traded holding company that does business as Grand Canyon University.  It trades on the NASDAQ exchange under the symbol "LOPE," which is based on the school's mascot, the antelope.  The stock has surged in

2

recent years and currently trades at approximately $116 per share, giving it a ***market value of nearly $5.6 billion***.  The company reported profits for 2018 in the amount of ***$229,000,000***. Grand Canyon Education is registered to do business in Arizona and can be served with process via its agent Corporation Service Company, 8825 N 23rd Avenue, Suite 100, Phoenix, Arizona 85021.

9. Collectively, Defendants will be referred to as "GCU" for ease of reference.

## JURISDICTION AND VENUE

10. This Court has jurisdiction of this action under the Class Action Fairness Act of 2005.  Pursuant to 28 U.S.C. §§ 1332(d)(2) and (6), this Court has original jurisdiction because (1) the proposed classes are comprised of at least 100 members; (2) proposed class members reside in at least seven states, meaning at least one member of the proposed classes resides outside of Arizona or Delaware, where GCU resides; and (3) the aggregate claims of the putative class members exceed $5 million, exclusive of interest and costs.

11. Venue is proper in this district pursuant to 28 U.S.C. § 1391 because GCU is subject to personal jurisdiction here and regularly conducts business in this District, and because a substantial part of the events or omissions giving rise to the claims asserted herein occurred in this district.

## PROCEDURAL BACKGROUND

12. Plaintiffs originally filed against Defendants on or about March 7, 2019 in the Superior Court of Fulton County, Georgia in a case styled *Carr v. Grand Canyon University, Inc., et al.*, Case No. 2019CV317885.  Defendants removed the case to the United States District Court for the Northern District of Georgia, where it was assigned case number 1:19-cv-01707-TCB.

13. On August 19, 2019, the District Court in *Carr* issued an order dismissing the claims of Plaintiffs in this action – all of whom live outside of Georgia –for lack of jurisdiction.

14. Plaintiffs hereby promptly renew their claims against Defendants.

1

**GENERAL FACTUAL ALLEGATIONS**

2      15.    GCU is a rapidly growing for-profit college.  According to Defendants' recent

3  financial reporting to the Securities and Exchange Commission:

> Our enrollment at December 31, 2017 was approximately 90,300, representing an
> increase of approximately 10.2% over our enrollment at December 31, 2016.  Our
> net revenue and operating income for the year ended December 31, 2017 were
> $974.1 million and $282.8 million, respectively, representing increases of 11.5%
> and 19.2%, respectively, over the year ended December 31, 2016.  Our net
> revenue and operating income for the year ended December 31, 2016 were $873.3
> million and $237.2 million, respectively, representing increases of 12.2% and
> 12.8%, respectively, over the year ended December 31, 2015.

16.    Nearly 80% of GCU's students are online students who never set foot on the
school's Arizona campus.  According to Defendants' recent financial reporting:

> At December 31, 2017, we had 90,297 students enrolled in our courses, of which
> 71,455, or 79.1%, were enrolled in our online programs, and 18,842, or 20.9%,
> were enrolled in our ground programs.  Of our students in online programs, which
> were geographically distributed throughout all 50 states of the United States, and
> Canada, and in professional studies programs, 86.1% were age 25 or older.  Of our
> traditional on-campus students, 95.6% were under age 25 and, although we draw
> students from throughout the United States, a majority were from Arizona.

17.    The most important part of Defendants' operation is its highly efficient system of
pushing students to apply for federal student loans and grants.  Defendants concede that over
71% of GCU's funding comes from the federal government:

> During fiscal 2017 and 2016, we derived approximately 71.5% and 72.3%,
> respectively, of our net revenues (calculated on a cash basis in accordance with
> Department of Education standards currently in effect) from tuition financed under
> the Title IV programs.  The primary Title IV programs that our students receive
> funding from are the Federal Direct Loan program or FDL Program, and the
> Federal Pell Grant, or Pell, Program.

18.    Large portions of GCU's student population are not only online students, who
never set foot on the school's Arizona campus, but also working adult students who enroll in
GCU to pursue a master's or doctoral degree.

4

19.     GCU has summarized the extent of these programs as follows:

> We offer master's and doctoral degrees in contemporary fields that are designed to provide students with the capacity for transformational leadership in their chosen industry, emphasizing the immediate relevance of theory, application, and evaluation to promote personal and organizational change.  We believe the growing brand of the University and the value proposition for both traditional aged students attending on our campus in Phoenix, Arizona and working adult students attending on our campus or at off-site locations in cohorts (referred to by us as professional studies students) or online, has enabled us to increase enrollment to approximately 90,300 students at December 31, 2017.  At December 31, 2017, 79.1% of our students were enrolled in our online programs, and, of our working adult students (online and professional studies students), 50.5% were pursuing master's or doctoral degrees.

20.     GCU represents that its doctoral programs require 60 credit hours to complete.  These 60 credit hours include three dissertation courses worth three credit hours each.  However, GCU's representation that its doctoral programs can be completed in 60 credit hours is false.  GCU does not provide the resources needed to complete the dissertation, and therefore the doctoral program, while taking the first three dissertation courses.  The result is that GCU doctoral students must then enroll in additional courses to complete their dissertation.  In fact, GCU has designed its dissertation program and requirements so that it is highly unlikely that its dissertation students can complete the program within 60 credit hours.

21.     These dissertation courses are not actual academic classes, but rather a mechanism whereby students receive individualized support in their "dissertation journey" (the phrase utilized by GCU) with their dissertation chair and committee members.

22.     When students do not satisfactorily complete their dissertation at the end of their three dissertation courses, GCU then requires students to take what are referred to as "research continuation" courses.  What GCU fails to adequately disclose is that GCU designs its doctoral programs so that nearly all students are in fact *required* to take these extra courses.

23.     Research continuation courses are purportedly the vehicle to provide students with continuing individualized support for completing their "dissertation journey."  According to the

GCU course catalog, research continuation courses are essentially the same thing as dissertation courses because they allow students "to work directly with their dissertation chair and committee members based on their individual progress plan for completing their dissertation."

24.     GCU students are allowed to receive three credit hours for the first five research continuation courses that they take while working on their dissertation.

25.     These three credit hours, however, are basically worthless because a doctoral student has already completed the 60 credit hours purportedly needed to complete the program by the time they are enrolled in these initial research continuation courses.

26.     Doctoral students are charged $650 for each credit toward the first five continuation courses, for a total of $1,950 per research continuation course.

27.     Thus, a student taking all of these first five continuation courses will have received 15 additional – ***and completely unnecessary*** – course credits and paid GCU – either directly or through more student loan debt – an additional $9,750 in tuition payments.

28.     If a student has not completed his or her dissertation within 75 credit hours, they are enrolled in "dissertation research continuation courses." These courses are worth zero credit hours and are supposedly designed to "emphasize the finalization of the dissertation" – the same purpose given for the first five "Research Continuation Courses."

29.     While at first blush it would appear that these courses are likely to be necessary only for a few students, in reality, GCU utilizes these courses as a way to unnecessarily extend a student's dissertation process and to assess additional tuition.

30.     For example, students considering enrolling in GCU's Doctor of Business Administration with an Emphasis in Data Analytics program review GCU's published Academic Catalog. Before enrolling with GCU, students review the Catalog to determine required courses, hours, time, and cost of earning a degree from GCU. The Catalog lists the degree requirements a candidate must complete in order to earn the degree. GCU lists a variety of courses, in order, beginning with an introductory course and concluding with "DBA [Doctor

of Business Administration]-965: Dissertation III."  GCU then totals the credits earned for each listed course (3 hours each) and shows a total of 60 credit hours required for completion of the degree.

31.     GCU then states, below its list of required courses, and tabulation of 60 credit hours, that "doctoral learners who did not complete their dissertation in DBA-965 must take one or more of the following in order to complete their dissertation:" followed by "Research Continuation Courses" I-V and then the zero-credit "dissertation research continuation."

32.     GCU's presentation of the course requirements and "Continuation" courses is at least misleading because students cannot complete the DBA program within 60 credit hours.  In fact, a closer review of GCU's doctoral program requirements shows that it is *impossible* to complete the program within only 60 credit hours.  GCU's "Dissertation Milestone Table," attached as "Appendix A" to its "University Policy Handbook" (a 185-page document separate and apart from its 413-page Academic Catalog), shows that GCU requires eight "review levels" leading to "final approval" and publication of a dissertation.  The "milestones" also list a "minimum progression point" for each of the eight "review levels."

33.     A side-by-side examination of the course requirements in the Academic Catalog and the "minimum progression points," listed along with the "milestones" attached as an appendix to the University Policy Handbook, is the only way a prospective student could discover the impossibility of completing the program in 60 credit hours.  This examination reveals that GCU in fact *requires* that its Doctor of Business Administration candidates complete, *at a minimum*, one "research continuation" course just to reach level four (of eight) of the dissertation review process.  In order to reach dissertation review level eight, required for publication and graduation, the student must, *at a minimum*, have completed *all five* of the "research continuation" courses.

34.     Thus, any and all of GCU's representations that a student could possibly complete its Doctor of Business Administration program in 60 credit hours are materially false.  It is a

7

misrepresentation of material fact because, among other reasons, there are many other schools offering doctoral degrees that could actually be earned in 60 credit hours.    GCU's misrepresentations and omissions make it impossible for a prospective student to estimate the time and cost of earning a degree at GCU.

35.    Additionally, using GCU's online "net price calculator" for the DBA degree with an Emphasis in Data Analytics also represents that students can complete the program in 60 credit hours.  This online tool promises to show students exactly what their degrees will cost.  It is a critical piece of GCU's marketing machinery.  It has been programmed to provide false information to potential doctoral degree candidates.

36.    By the time a student figures out GCU's bait-and-switch scheme, it is far too late. After paying tens of thousands of dollars for years of coursework and starting on their "dissertation journey," GCU is well aware most students will not leave the program even though they realize they have been duped.

37.    Any and all credits earned as a part of GCU's "dissertation journey" are expressly non-transferable to another degree program.  Therefore, even if students did want to leave after they realize they were fooled, they cannot do so because their work and money will have been wasted.

38.    All of GCU's doctoral programs requiring dissertations are set up this way. Students would not enroll in a doctorate program at GCU if they were aware of the scheme described herein.  Plaintiffs and the class of individuals they seek to represent enrolled in programs at GCU relying on GCU's representation that the programs could be completed in 60 credit hours.  Plaintiffs and members of the proposed class were unaware of the falsity of GCU's misrepresentation.  GCU intentionally misrepresented the actual minimum number of course hours required to earn a doctoral degree – and the tuition expense of doing so – so that Plaintiffs and members of the Class would enroll at GCU.  Plaintiffs and members of the class they seek to represent had a right to rely on GCU's representations regarding credit

requirements.   In fact, the applicable Arizona code section (A.R.S. § 32-3051(5)) prohibits private postsecondary education companies such as GCU from "engaging in false or misleading advertising, solicitation, or recruitment practices."

39.    Although GCU lists the "dissertation continuation" as an "optional zero-credit course," it is in fact not optional for its average student.   GCU admits that, on average, its doctoral students are forced to take even more than five dissertation continuation courses (all taken after earning 60 credit hours) to complete their doctoral program.   Thus, the typical GCU doctoral student spends (or borrows) over $10,000 on extended "courses" while their dissertation remains incomplete and is actually *required* to pay GCU for at least one purportedly "optional zero-credit course," in addition to the 75 required hours (15 more than advertised), if the student wishes to complete his or her doctorate.

40.    GCU charges students $500 for each "dissertation research continuation" course even though these courses are worth zero credit hours.   Further, dissertation research continuation courses only last eight weeks rather than the usual 15 weeks.   Upon information and belief, GCU provides zero credits for the courses as a way to backdoor compliance with Title IV federal student loan requirements.   Otherwise, GCU would be required to disclose that the vast majority of its students in fact do not graduate within its advertised, or federally mandated, timelines.

41.    Students are not allowed to simply take time to work on their dissertation without paying GCU.   Rather, they must be enrolled and paying GCU, request a leave of absence, or re-enroll after taking at least 12 months off from pursuing their degree.   Thus, students are trapped into paying GCU even when the "research continuation courses" and "dissertation research continuation courses" are providing them no benefit.

42.    The longer a student takes to complete their dissertation, the more money GCU makes.   Unfortunately, as a profit-making corporation, answering to Wall Street and investors

each quarter, GCU has adopted practices which are intended to extend the online doctoral program to the detriment of students.

43.    In addition to the impossible milestones described above, GCU also maximizes the amount of money that it can make from these "research continuation courses" and "dissertation research continuation courses" by failing to ensure that a student's dissertation chair and committee members provide prompt and meaningful feedback to students regarding their dissertations and refusing to approve valid and methodologically sound research proposals. GCU intentionally understaffs doctoral committees and disincentivizes the members from promptly offering guidance to students.

44.    As a result, students end up taking numerous unnecessary continuation courses and paying GCU money that it is not entitled to.

45.    GCU's improper use of continuation courses also has many other negative effects on its doctoral students.  For example, a student taking only a dissertation research continuation course is not enrolled in the school the requisite amount of time to be considered a half-time student and therefore is not eligible to defer their student loan obligations.

46.    This is major detriment to many students who cannot obtain a job, a pay raise, or a promotion until they have completed their degree.  GCU is very much aware of its students' vulnerability but, rather than alleviating this suffering, it has continued its improper practices.

47.    As a result of GCU's practices, many students are forced to begin the process of paying back their student loans without actually completing their degree.  This is a true hardship and forces many students to default on their student loan debt, which in turn often causes a general financial spiral for the student.

48.    This is a case arising out of contract and Plaintiffs are entitled to an award of their costs and reasonable attorneys' fees under A.R.S. § 12-341 and 12-341.01

## **PLAINTIFFS' FACTUAL ALLEGATIONS**

49.     GCU's Academic Catalog promises doctoral students that "the College of Doctoral Studies will be the premier provider of online doctoral education."

50.     GCU's Academic Catalog further promises doctoral students that the school will "leverage the knowledge and expertise of faculty, learners, and experts external to the University through learning communities specific to the issues, concepts, and methods of a given discipline."

51.     GCU is not, however, a "premier provider of online doctoral education" that "leverage[s] the knowledge and expertise of faculty" in a fashion that benefits students.  Rather, GCU provides its doctoral students with substandard instruction and guidance and an insufficient level of resources to complete dissertations on a timely basis.

52.     GCU has also established mandatory benchmarks and milestones that cannot be achieved within the 60-hour format of its doctoral programs.  It is literally impossible for nearly all doctoral students to complete their dissertation – and therefore their degree – within the times represented by GCU.

53.     Plaintiff Eileen Carr is a student enrolled in a doctoral program offered by GCU.

54.     Ms. Carr received Federal Direct Loans in order to pay GCU for the educational services associated with her doctoral program.

55.     Ms. Carr has been victimized by GCU's continuation course program, having been enrolled in at least 12 continuation courses during her pursuit of a doctoral degree.

56.     Ms. Carr has been forced to pay GCU tuition for courses for which she receives zero credit hours and that provide no meaningful educational benefit towards her degree.

57.     Ms. Carr has been forced to pay for these continuation courses due to GCU's mandatory dissertation completion system which precluded her from finishing her dissertation on a timely basis.  Also, the GCU faculty failed to provide prompt and meaningful feedback

1 regarding her dissertation.  Despite her best efforts, the necessary guidance and resources have
2 not been made available such that her dissertation could have been completed on a timely basis.

3    58.    Ms. Carr has also been forced to begin to repay her student loans while still
4 enrolled in GCU because she does not qualify for a deferment because she does not qualify as a
5 half-time student while taking only a continuation course.

6    59.    Plaintiff Samuel Stanton is a student enrolled in a doctoral program offered by
7 GCU.

8    60.    Mr. Stanton received Federal Direct Loans in order to pay GCU for the
9 educational services associated with his doctoral program.

10   61.    Mr. Stanton has been victimized by GCU's continuation course program, having
11 been enrolled in at least five continuation courses during his pursuit of a doctoral degree.

12   62.    Mr. Stanton has been forced to pay for these continuation courses due to GCU's
13 mandatory dissertation completion system which precluded him from finishing his dissertation
14 on a timely basis.  Also, the GCU faculty failed to provide prompt and meaningful feedback
15 regarding his dissertation.  Despite his best efforts, the necessary guidance and resources have
16 not been made available such that his dissertation could have been completed on a timely basis.

17   63.    Mr. Stanton has also been forced to begin to repay his student loans while still
18 enrolled in GCU because he does not qualify for a deferment because he does not qualify as a
19 half-time student while taking only a continuation course.

20   64.    Plaintiff Jane Doe I is a student enrolled in a doctoral program offered by GCU.

21   65.    Ms. Doe I has been victimized by GCU's continuation course program, having
22 been enrolled in at least 20 continuation courses during her pursuit of a doctoral degree.

23   66.    Ms. Doe I has been forced to pay GCU tuition for courses for which she receives
24 zero credit hours and that provide no meaningful educational benefit towards her degree.

25   67.    Ms. Doe I has been forced to pay for these continuation courses due to GCU's
26 mandatory dissertation completion system which precluded her from finishing her dissertation

12

on a timely basis.  Also, the GCU faculty failed to provide prompt and meaningful feedback regarding her dissertation.  Despite her best efforts, the necessary guidance and resources have not been made available such that her dissertation could have been completed on a timely basis. Ms. Doe I has also been forced to begin to repay her student loans while still enrolled in GCU because she does not qualify for a deferment because she does not qualify as a half-time student while taking only a continuation course.

68.     Plaintiff Jane Doe II is a student enrolled in a doctoral program offered by GCU.

69.     Ms. Doe II has been victimized by GCU's continuation course program, having been enrolled in at least nine continuation courses during her pursuit of a doctoral degree.

70.     Ms. Doe II has been forced to pay GCU tuition for courses for which she receives zero credit hours and that provide no meaningful educational benefit towards her degree.

71.     Ms. Doe II has been forced to pay for these continuation courses due to GCU's mandatory dissertation completion system which precluded her from finishing her dissertation on a timely basis.  Also, the GCU faculty failed to provide prompt and meaningful feedback regarding her dissertation.  Despite her best efforts, the necessary guidance and resources have not been made available such that her dissertation could have been completed on a timely basis.

72.     Ms. Doe II has also been forced to begin to repay her student loans while still enrolled in GCU because she does not qualify for a deferment because she does not qualify as a half-time student while taking only a continuation course.

73.     Plaintiff Jane Doe III is a student enrolled in a doctoral program offered by GCU.

74.     Jane Doe III has been victimized by GCU's continuation course program, having been enrolled in at least 14 continuation courses during her pursuit of a doctoral degree.

75.     Ms. Doe III has been forced to pay GCU tuition for courses for which she receives zero credit hours and that provide no meaningful educational benefit towards her degree.

76.     Ms. Doe III has been forced to pay for these continuation courses due to GCU's mandatory dissertation completion system which precluded her from finishing her dissertation

on a timely basis. Also, the GCU faculty failed to provide prompt and meaningful feedback regarding her dissertation. Despite her best efforts, the necessary guidance and resources have not been made available such that her dissertation could have been completed on a timely basis.

77.     Ms. Doe III has been requested to begin to repay her student loans while still enrolled in GCU because she does not qualify as a half-time student while taking only a continuation course. Ms. Doe III has requested a special deferment in hopes of avoiding repayment of her loans while still pursuing her degree.

## CLASS ACTION ALLEGATIONS

78.     Plaintiffs bring this class action on behalf of themselves and the following class of persons:

> All Grand Canyon University doctoral students who have paid for research continuation courses or dissertation research continuation courses as part of the pursuit of a doctoral degree.

79.     Excluded from the Class are Defendants' officers, directors, affiliates, legal representatives, employees, successors, subsidiaries, and assigns. Also excluded from the Class is any judge, justice, or judicial officer presiding over this matter and the members of their immediate families and judicial staff.

80.     The time period for the Class is the number of years immediately preceding the date on which this Complaint was filed as allowed by the applicable statute of limitations, going forward into the future until such time as Defendants cease their improper conduct.

81.     Numerosity:  The members of the proposed Class are so numerous that individual joinder of all members is impracticable. GCU has over 90,000 students on an annual basis. Recent certified financial reports by GCU confirm that over 50% of the 71,000 online students are pursuing master's and doctoral degrees from the school each year. Thus, tens of thousands of current and former students are likely included in the Class. The exact number and identities

14

1 of the members of the proposed Class are unknown at this time and can be ascertained only
2 through appropriate discovery.

3    82.    <u>Common Questions of Law and Fact Predominate</u>:  There are many questions of
4 law and fact common to Plaintiffs and the Class and those questions substantially predominate
5 over any questions that may affect individual Class members.  Common questions of law and
6 fact include, but are not limited to:

7        a.    Whether Defendants made misstatements, misrepresentations, and/or
8 omissions about their doctoral programs.

9        b.    Whether Defendants have a legal and/or contractual duty to provide refunds
10 to GCU students for courses that provide absolutely no value.

11        c.    Whether Defendants have breached their contracts with Plaintiffs and the
12 Class via the practices described herein.

13        d.    Whether Defendants have been unjustly enriched as a result of their
14 improper research continuation courses and dissertation research continuation courses.

15    83.    <u>Typicality</u>:  Plaintiffs' claims are typical of the claims of the members of the
16 Class.  Plaintiffs and all members of the Class have been similarly affected by the actions of
17 Defendants.  For example, Defendants' form contracts as well as their breaches as described
18 herein are the same or substantially the same for Plaintiffs and all members of the Class.  GCU
19 has established systematic and automated policies and practices to govern the use of dissertation
20 research continuation courses.  Thus, the experiences of Plaintiffs are typical.

21    84.    <u>Adequacy of Representation</u>:  Plaintiffs will fairly and adequately represent and
22 protect the interests of the Class.  Plaintiffs have retained counsel with substantial experience in
23 prosecuting complex and consumer class action litigation.  Plaintiffs and their counsel are
24 committed to vigorously prosecuting this action on behalf of the Class and have the financial
25 resources to do so.

26

85. <u>Superiority of Class Action</u>:  Plaintiffs and the members of the Class suffered, and will continue to suffer, harm as a result of Defendants' unlawful and wrongful conduct.  A class action is superior to other available methods for the fair and efficient adjudication of the present controversy.  Individual joinder of all members of the Class is impractical.  Even if individual Class members had the resources to pursue individual litigation, it would be unduly burdensome to the courts in which the individual litigation would proceed.  Individual litigation magnifies the delay and expense to all parties in the court system of resolving the controversies engendered by Defendants' common course of conduct.  The class action device allows a single court to provide the benefits of unitary adjudication, judicial economy, and the fair and equitable handling of all Class members' claims in a single forum.  The conduct of this action as a class action conserves the resources of the parties and of the judicial system and protects the rights of the Class members.

86. <u>Risk of Inconsistent or Varying Adjudication</u>:  Class action treatment is proper and this action should be maintained as a class action because the risks of separate actions by individual members of the Class would create a risk of:  (a) inconsistent or varying adjudications with respect to individual Class members which would establish incompatible standards of conduct for the Defendants as the parties opposing the Class; and/or (b) adjudications with respect to individual Class members would, as a practical matter, be dispositive of the interests of other Class members not party to the adjudication or would substantially impair or impeded their ability to protect their interests.

87. <u>Action Generally Applicable to Class as a Whole</u>:  Defendants, as the parties that may potentially oppose certification of the Class, have acted or refused to act on grounds generally applicable to the Class, thereby making appropriate final injunctive relief or corresponding declaratory relief with respect to the Class as a whole.

**REQUESTS FOR RELIEF**

**COUNT ONE**
**BREACH OF CONTRACT**
(On Behalf of Plaintiffs and the Class)

88.     Plaintiffs incorporate by reference the allegations from paragraphs 1-87 as if set forth verbatim herein.

89.      Plaintiffs and Defendants have contracted for educational services.  As described above, Defendants have violated the specific terms of its form agreement with Plaintiffs.

90.     The relevant terms of GCU's contracts are materially the same for all students. Student policies – which are expressly incorporated into the student agreement – are also the same for all doctoral students.

91.     GCU breaches these contracts in several ways.  First, GCU breaches its contracts with doctoral students by designing its programs in such a way that it is impossible for the student to complete the program in 60 credit hours, regardless of the student's diligence.

92.     By charging students for courses that provide no actual academic benefit, but rather only benefit GCU financially, GCU breaches its promise to be the premier provider of online doctoral education.

93.     According to GCU's Academic Catalog, Defendants are responsible for, among other things, assessing students' needs for support services and providing support throughout the doctoral process.

94.     GCU breaches these contractual obligations by failing to ensure that its dissertation chairs and committee members provide students with prompt and meaningful feedback regarding their dissertations.

95.     GCU contractually agrees to provide its doctoral students the "individualized support" needed to timely complete a dissertation, in exchange for the student's payment of tuition toward "research continuation courses."

96.    GCU also promises that dissertation chair and committee members will "work directly" with doctoral candidates to complete his or her dissertation in a timely manner.

97.    Doctoral candidates hold up their end of the bargain, but GCU does not by failing to ensure that its faculty provides students with the individualized support promised so that students can complete their dissertation.

98.    GCU's enrollment agreements contain a choice of law provision mandating that the laws of the State of Arizona apply with respect to disputes over GCU's performance under the agreement.

99.    Arizona law imposes upon each party to a contract the duty of good faith and fair dealing.  Good faith and fair dealing, in connection with executing contracts and discharging performance and other duties according to their terms, means preserving the spirit – not merely the letter – of the bargain.  Put differently, the parties to a contract are mutually obligated to comply with the substance of their contract in addition to its form.  Evading the spirit of the bargain is an example of a violation of good faith in the performance of contracts.

100.    Subterfuge and evasion violate the obligation of good faith in performance even when an actor believes his conduct to be justified.  A lack of good faith may be overt or may consist of inaction, and fair dealing may require more than honesty.  Examples of violations of good faith and fair dealing are willful rendering of imperfect performance and abuse of a power to specify terms.

101.    Defendants have breached the covenant of good faith and fair dealing through their practices as alleged herein.  Even if the Court or jury does not find a breach of an express contractual provision, it should find that Defendants violated good faith by failing to offer a reasonable opportunity to complete dissertations during the initial 60-credit hour period.  This is a perfect illustration of imperfect performance, which, like evasion of the spirit of the bargain, lack of diligence and slacking off, abuse of a power to specify terms, and interference with or failure to cooperate in the other party's performance are well-established examples of breaching

the covenant of good faith and fair dealing under Arizona law.  Further, Defendants' systematic refusal to provide meaningful guidance to its doctoral students is not in keeping with good faith and fair dealing.

102.    GCU is likely to argue that it has given itself the discretion in how to administer its doctoral program.  Such discretion is, however, constrained by the covenant of good faith and fair dealing.  Where GCU has abused its discretion and failed to provide proper systems and educational instruction, a breach of good faith has occurred.

103.    Plaintiffs and the Class have performed all, or substantially all, of the obligations imposed on them under the agreement, or those obligations are waived.

104.    Plaintiffs and members of the Class sustained damages as a result of Defendants' breaches of the agreement, as well as the further breaches of the agreement as modified by the covenant of good faith and fair dealing.

105.    This case arises out of contract and Plaintiffs are entitled to an award of costs and their attorneys' fees pursuant to A.R.S. §§ 12-341 and 12-341.01.

## COUNT TWO
## VIOLATIONS OF THE ARIZONA CONSUMER FRAUD ACT
### (A.R.S. § 44-1521, *et seq.*)
(On Behalf of Plaintiffs and the Class)

106.    Plaintiffs incorporate by reference the allegations from paragraphs 1-87 as if set forth verbatim herein.

107.    GCU's enrollment agreements contain a choice of law provision mandating that the laws of the State of Arizona apply with respect to disputes over GCU's performance under the agreement.

108.    The Arizona Consumer Fraud Act ("CFA"), A.R.S. § 44-1521, *et seq*. prohibits:

*The act, use or employment by any person of any deception, deceptive or unfair act or practice, fraud, false pretense, false promise, misrepresentation, or concealment, suppression or omission of any material fact with intent that others rely on such concealment, suppression or omission, in connection with the sale or*

*advertisement of any merchandise whether or not any person has in fact been misled, deceived or damaged thereby.*

109.    The relevant services advertised and sold by GCU qualify as "merchandise" under the CFA.  GCU qualifies as a "person" under the CFA.

110.    A statement is "deceptive" if it has the tendency and capacity to convey misleading impressions to consumers, even if interpretations that would not be misleading also are possible.   Whether a statement has the tendency to mislead is determined from the perspective of the "least sophisticated reader," in light of all that is reasonably implied, not just from what is said.   It is not necessary for the plaintiff to show that the defendant made an affirmative misstatement.   Material omissions are also actionable.   A misrepresentation causes injury where the consumer relies on it, but this reliance need not be reasonable.

111.    GCU represented to Plaintiffs and the Class that GCU doctoral programs can be completed in 60 credit hours, as described in detail above.   This representation is false because graduation from a GCU doctoral program requires completion of a dissertation.   In order to finish GCU's "dissertation journey," students must complete more than 60 credit hours, as described in detail above.   GCU omitted the fact that its doctoral programs cannot be completed in 60 credit hours, an actionable omission under the CFA.

112.    GCU's misrepresentation and omission is material because the minimum number of credit hours required to complete a course controls the dollar cost and amount of time it will take a student to complete the program.   Cost and time are material factors that Plaintiffs and the members of the Class considered before choosing to enroll in a GCU doctoral program.   Plaintiffs and the members of the Class chose to enroll in a GCU doctoral program because GCU represented the program can be completed in 60 credit hours.

113.    GCU knows that its misrepresentation is false because the doctoral dissertation requirements that it created and enforces makes it impossible for a student to complete a GCU doctoral program in 60 credit hours.

114.   GCU intended that Plaintiffs and the Class members rely upon GCU's misrepresentations and omissions leading Plaintiffs and Class members to choose to enroll in a GCU doctoral program instead of a comparable program offered by another institution that could be completed in less time and for less money.

115.   Plaintiffs and the members of the Class were consequently and proximately injured by GCU's misrepresentation and omission when Plaintiffs and the Class enrolled in a GCU doctoral program instead of another school's program, paid for more credit hours than they would have elsewhere, and paid for credit hours without receiving any benefit from those hours.

116.   GCU's pattern of misrepresentations and omissions complained of herein show is willful, wanton, and shows a reckless indifference to the interests of others.   Therefore, Plaintiffs and the Class are entitled to an award of punitive damages.

117.   This case arises out of contract and Plaintiffs are entitled to an award of costs and their attorneys' fees pursuant to A.R.S. §§ 12-341 and 12-341.01.

## COUNT THREE
## INTENTIONAL MISREPRESENTATION
(On Behalf of Plaintiffs and the Class)

118.   Plaintiffs incorporate by reference the allegations from paragraphs 1-87 as if set forth verbatim herein.

119.   GCU represented to Plaintiffs and the Class that GCU doctoral programs can be completed in 60 credit hours, as described in detail above.

120.   This representation is false because graduation from a GCU doctoral program requires completion of a dissertation.   In order to finish GCU's "dissertation journey," students must complete more than 60 credit hours, as described in detail above.

121.   GCU's misrepresentation is material because the minimum number of credit hours required to complete a course controls the dollar cost and amount of time it will take a student to

21

complete the program.  Cost and time are material factors that Plaintiffs and the members of the Class considered before choosing to enroll in a GCU doctoral program.  Plaintiffs and the members of the Class chose to enroll in a GCU doctoral program because GCU represented the program can be completed in 60 credit hours.

122.   GCU knows that its misrepresentation is false because the doctoral dissertation requirements that it created and enforces make it impossible for a student to complete a GCU doctoral program in 60 credit hours.

123.   GCU intended that Plaintiffs and the Class members rely upon GCU's misrepresentation leading Plaintiffs and Class members to choose to enroll in a GCU doctoral program instead of a comparable program offered by another institution that could be completed in less time and for less money.

124.   Plaintiffs and the members of the Class were unaware of the falsity of GCU's misrepresentation until after committing significant time and funds to pay for non-transferable credit hours.

125.   Plaintiffs and the members of the Class relied on the truth of GCU's misrepresentation.  Plaintiffs and members of the Class would not have enrolled in a GCU doctoral program had they known GCU's representation was false.

126.   Plaintiffs and the members of the Class had a right to rely on GCU's representation – made in GCU's Academic Catalog, in the online tuition price calculator, and many other places – that a doctoral program could be completed in 60 credit hours.

127.   Plaintiffs and the members of the Class were consequently and proximately injured by GCU's misrepresentation when Plaintiffs and the Class enrolled in a GCU doctoral program instead of another school's program, paid for more credit hours than they would have elsewhere, and paid for credit hours without receiving any benefit from those hours.

128.   This case arises out of contract and Plaintiffs are entitled to an award of costs and their attorneys' fees pursuant to A.R.S. §§ 12-341 and 12-341.01.

1

2

**COUNT FOUR**
**NEGLIGENT MISREPRESENTATION**
(On Behalf of Plaintiffs and the Class)

3

4

129.   Plaintiffs incorporate by reference the allegations from paragraphs 1-87 as if set forth verbatim herein.

5

6

7

8

130.   GCU gave false information intended for the guidance of Plaintiffs and the members of the Class by, among other things, informing potential students that their doctoral programs can be completed in 60 credits when GCU fails to provide the resources needed to complete the doctoral program without taking more than 60 credits.

9

10

11

12

13

131.   GCU failed to exercise reasonable care or competence in obtaining or communicating the information GCU gave for the guidance of Plaintiffs and the members of the Class. Specifically, and among other things, GCU failed to timely provide Plaintiffs and members of the Class of the information necessary for them to understand it is improbable that they will obtain a doctoral degree without taking more than 60 credits.

14

15

16

132.   Plaintiffs and members of the Class justifiably relied upon the false information GCU gave for their guidance. Plaintiffs and members of the Class would not have enrolled in a GCU doctoral program had they known GCU's representation was false.

17

18

19

133.   Plaintiffs and the members of the Class had a right to rely on GCU's representation – made in GCU's Academic Catalog, in the online tuition price calculator, and many other places – that a doctoral program could be completed in 60 credit hours

20

21

22

23

24

134.   As a result of GCU's failure to exercise reasonable care of competence in obtaining or communicating the information it gave for the guidance of Plaintiffs and the members of the Class, Plaintiffs and the members of the Class were consequently and proximately injured by GCU's misrepresentation when Plaintiffs and the Class enrolled in a GCU doctoral program instead of another school's program, paid for more credit hours than

25

26

23

they would have elsewhere, and paid for credit hours without receiving any benefit from those hours.

135.    This case arises out of contract and Plaintiffs are entitled to an award of costs and their attorneys' fees pursuant to A.R.S. §§ 12-341 and 12-341.01

**COUNT FIVE**
**UNJUST ENRICHMENT**
(On Behalf of Plaintiffs and the Class)

136.    Plaintiffs incorporate by reference the allegations from paragraphs 1-87 as if set forth verbatim herein.

137.    This Count is pursued only in the alternative to Count One.    Plaintiffs acknowledge that if their breach of contract claims are successful they cannot also pursue unjust enrichment.    If, however, all or portions of Defendants' contracts are deemed invalid or unenforceable for any reason, or the breach of contract claim does not survive to trial, then unjust enrichment may be applicable.    Also, if claims are deemed not to be covered by contract – for example, if Defendants have kept funds in violation of federal or state law or regulation, but in a way that does not violate the contract – then unjust enrichment will require disgorgement of such funds.

138.    Plaintiffs, on behalf of themselves and the Class, assert a common law claim for unjust enrichment.

139.    By means of Defendants' wrongful conduct alleged herein, Defendants knowingly engaged in practices which harmed Plaintiffs and members of the Class and that were unfair, unconscionable, and oppressive.    Moreover, Defendants' conduct is improper and/or illegal as a matter of law.

140.    Defendants knowingly received and retained wrongful benefits and funds from Plaintiffs and members of the Class.    In so doing, Defendants acted with conscious disregard for the rights of Plaintiffs and members of the Class.

141.    As a result of Defendants' wrongful conduct as alleged herein, GCU and its owners have been unjustly enriched at the expense of, and to the detriment of, Plaintiffs and members of the Class.

142.    Plaintiffs have conferred a benefit upon Defendants in the form of tuition payments for the unnecessary continuation courses.

143.    Defendants' unjust enrichment is traceable to, and resulted directly and proximately from, the conduct alleged herein.

144.    Under the doctrine of unjust enrichment, as interpreted under Arizona law, it is inequitable for Defendants to be permitted to retain the benefits they have received, and are still receiving, without justification, by improper handling of their research continuation courses and dissertation research continuation courses.    Defendants' retention of such funds under circumstances making it inequitable to do so constitutes unjust enrichment.

145.    The financial benefits derived by Defendants rightfully belong to Plaintiffs and members of the Class.  Defendants should be compelled to disgorge into a common fund for the benefit of Plaintiffs and members of the Class all wrongful or inequitable proceeds.   A constructive trust should be imposed upon all wrongful or inequitable sums received by Defendants traceable to Plaintiffs and the members of the Class.

146.    Plaintiffs and members of the Class have no adequate remedy at law.

**COUNT SIX**
**DECLARATORY JUDGMENT**
(On Behalf of Plaintiffs and the Class)

147.    Plaintiffs incorporate by reference the allegations from paragraphs 1-87 as if set forth verbatim herein.

148.    Class-wide declaratory relief is appropriate where Defendants have "acted or refused to act on grounds that apply generally to the class."

149.   Defendants have attempted to immunize themselves from liability for their improper practices by burying a purported arbitration clause and related provisions that make it as difficult, dangerous, and costly as possible for students to obtain relief from Defendants' improper practices.

150.   Among the ways that GCU attempts to immunize itself from liability is by attempting to force its students to pay its attorney's fees if the student files an action in court rather than participating in arbitration.

151.   The risk that GCU will pursue the collection of attorney's fees and costs from a student is not hypothetical, but real given GCU's past conduct in other cases.  See Demand for Attorney's Fees and Costs (Exhibit 1 hereto).

152.   This conduct is particularly shocking given that GCU is precluded from enforcing its arbitration requirement due to the Borrower Defense Regulations, 81 Fed. Reg. 75,926 (Nov. 1, 2016), which expressly prohibit a school that participates in the Direct Loan Program from enforcing an agreement that a borrower waive his or her right to initiate or participate in a class action lawsuit.

153.   Indeed, GCU has recently complied with the Borrower Defense Regulations by informing all of its students that it will not "use any predispute agreement to stop [them] from being part of a class action lawsuit in court or bringing a lawsuit if you assert a borrower defense claim" and that students "may file a lawsuit, including a class action lawsuit, regarding such a claim or you may be a member of a class action lawsuit regarding such a claim even if you do not file it."  See GCU Email (Exhibit 2 hereto).  The notice was required by law. Despite this promise to students – and its plain obligations under federal law – GCU has demanded individual arbitration in this case.

154.   GCU's arbitration clause and one-sided attorney's fee provisions are unenforceable on multiple grounds, including because they are illusory, lack mutuality, and violate federal law and regulation.  Furthermore, the provisions are invalid exculpatory clauses

1  because they are designed to severely restrict remedies and insulate Defendants from liability
2  and are not explicit, prominent, and clear, and indeed are set forth in a manner that does not
3  distinguish their importance from other contract terms.

4       155.    Moreover, considering the great business acumen and experience of Defendants in
5  relation to Plaintiffs and the members of the Class, the great disparity in the parties' relative
6  bargaining power, the inconspicuousness and incomprehensibility of the contract language at
7  issue, the oppressiveness of the terms, the unreasonableness of the terms, the purpose and effect
8  of the terms, the allocation of the risks between the parties, and similar public policy concerns,
9  these provisions are unconscionable and, therefore, unenforceable as a matter of law.

10       156.    A judicial declaration is necessary and appropriate so the parties may ascertain
11  their rights, duties, and obligations with respect to these provisions.

12       157.    The Court should use its equitable powers to declare these provisions to be
13  unenforceable.

14       158.    This case arises out of contract and Plaintiffs are entitled to an award of costs and
15  their attorneys' fees pursuant to A.R.S. §§ 12-341 and 12-341.01.

16       159.    Plaintiffs are entitled to an award of their costs pursuant to A.R.S. § 12-1840.

17       WHEREFORE, Plaintiffs, on behalf of themselves and the proposed Class, request that
18  this Court enter judgment against Defendants and:

19          (a)    Certify this case as a class action pursuant to Fed. R. Civ. P. 23 and appoint
20  Plaintiffs as class representatives and Plaintiffs' counsel as class counsel;

21          (b)    Award Plaintiffs and the Class actual, incidental, and consequential
22  damages in an amount to be proven at trial, including any and all compensatory damages,
23  punitive damages, restitution, any applicable penalties and interest, authorized attorneys' fees
24  and costs, and any further relief as the Court deems just, equitable, and proper;

25          (c)    For an award of all reasonable costs and attorneys' fees incurred by
26  Plaintiffs;

1    (d)    For trial by jury of all matters; and

2    (e)    For such other and further relief as the Court may deem just and equitable.

3    DATED this 18th day of September 2019.

4                                          DESSAULES LAW GROUP

5

6                                          /s/ Jonathan A. Dessaules
                                           Jonathan A. Dessaules
7                                          David E. Wood
                                           Ashley C. Hill
8                                          DESSAULES LAW GROUP
                                           5353 N. 16th St., Ste. 110
9                                          Phoenix, Arizona 85016
                                           T: (602) 274-5400
10                                         F: (602) 274-5401
                                           jdessaules@dessauleslaw.com
11                                         dwood@dessauleslaw.com
                                           ahill@dessauleslaw.com
12
                                           E. Adam Webb
13                                         G. Franklin Lemond, Jr.
                                           WEBB, KLASE & LEMOND, LLC
14                                         1900 The Exchange, S.E., Suite 480
                                           Atlanta, Georgia 30339
15                                         (770) 444-9325
                                           (770) 217-9950 (fax)
16                                         Adam@WebbLLC.com
                                           Franklin@WebbLLC.com
17                                         (*Pro Hac Vice Application Forthcoming*)
18
                                           *Co-Counsel for Plaintiffs*
19

20

21

22

23

24

25

26