WO

# IN THE UNITED STATES DISTRICT COURT
# FOR THE DISTRICT OF ARIZONA

| | |
|---|---|
| Eileen Carr, et al., | No. CV-19-05214-PHX-MTL |
| Plaintiffs, | **ORDER** |
| v. | |
| Grand Canyon University Incorporated, et al., | |
| Defendants. | |

Plaintiffs and putative class members Eileen Carr, Samuel Stanton, Jane Doe I, Jane Doe II, and Jane Doe III have filed a Motion to Recuse Pursuant to 28 U.S.C. § 144 and 28 U.S.C. § 455 (the "Motion"). (Doc. 13.) The Court denies the Motion as it pertains to 28 U.S.C. § 455. Pursuant to 28 U.S.C. § 144, the Court refers the remaining recusal issues to another United States District Judge in this District who "shall be assigned to hear such proceeding."

## I.    INTRODUCTION

This action was initiated in this Court on September 18, 2019 and assigned by random selection to the undersigned Judge of the United States District Court. (Docs. 1 and 3.)[1] Each of the named Plaintiffs participate in Defendants' online doctoral program. On behalf of themselves and other similarly situated individuals, Plaintiffs contend that the

---

[1] Plaintiffs originally filed a similar complaint in Georgia state court. Defendants removed the case to the United States District Court for the Northern District of Georgia, where it was ultimately dismissed for lack of personal jurisdiction. *Carr v. Grand Canyon University, Inc.*, No. 1:19-cv-1707-TCB (N.D. Ga. August 19, 2019).

Defendants, Grand Canyon University, Inc. and Grand Canyon Education, Inc. (collectively "Defendants" or "GCU"), falsely advertise the number of credit hours required to complete its doctoral program. Plaintiffs' Complaint states that Defendants advertise a doctoral degree is attainable with 60 credit hours of coursework, including "three dissertation courses worth three credit hours each." (Doc. 1 at ¶ 20.) In reality, as averred by Plaintiffs,

> GCU's representation that its doctoral programs can be completed in 60 credit hours is false. GCU does not provide the resources needed to complete the dissertation, and therefore the doctoral program, while taking the first three dissertation courses. The result is that GCU doctoral students must then enroll in additional courses to complete their dissertation. In fact, GCU has designed its dissertation program and requirements so that it is highly unlikely that its dissertation students can complete the program within 60 credit hours.

(*Id*.)

On October 15, 2019, Defendants filed a Motion to Dismiss (Doc. 8), which is fully briefed, and a Motion to Compel Arbitration (Doc. 9), which is not. Then, on October 29, 2019, Plaintiffs filed the instant Motion. (Doc. 13.) In its own words, the objective of the Motion is to obtain the disqualification of this Judge "based on the prior relationship between Judge Liburdi and Grand Canyon University."[2] (*Id*. at 1.)

## II. RECUSAL ANALYSIS UNDER 28 U.S.C. § 455

A motion for judicial recusal under § 455 "is directed to the judge, rather than the parties, and is self-enforcing on the part of the judge." *United States v. Sibla*, 624 F.2d 864, 867-68 (9th Cir. 1980). A judge who is the subject of a recusal motion filed under both

---

[2] One day after the Motion was filed, on October 30, 2019, Plaintiffs' local counsel (who did not appear on the Motion) filed a Motion to Withdraw (Doc. 18), in which the local counsel stated that, "[a] breakdown in the relationship between Local Counsel and Georgia Co-Counsel has occurred that Local Counsel believes prevents them from continuing to represent Plaintiffs in this matter." (*Id*. at 1.) The Motion to Withdraw continues to explain that, "Local Counsel does not believe it is appropriate to divulge the precise nature of the breakdown in this motion but would be willing to do so at an *ex parte* hearing should the Court deem it necessary and appropriate." (*Id*.)

§§ 144 and 455 may perform a recusal analysis under § 455 before referring the § 144 matter to a second judge. *Id.* at 868 ("[S]ection 455 modifies section 144 in requiring the judge to go beyond the section 144 affidavit and consider the merits of the motion pursuant to Section 455(a) & (b)(1)."). Thus the Court will begin with a § 455 review and analysis.

### A. Legal Standard

Section 455(a) requires that a "judge of the United States shall disqualify himself in any proceeding in which his impartiality might be questioned." It is well established in this Circuit that the test for recusal of a judicial officer is whether "a reasonable person with knowledge of all the facts would conclude that the judge's impartiality might reasonably be questioned." *United States v. Carey*, 929 F.3d 1092, 1104 (9th Cir. 2019) (quoting *Yagman v. Republic Ins.*, 987 F.2d 622, 626 (9th Cir. 1993)). A reasonable person "in this context means a well-informed, thoughtful observer, as opposed to a hypersensitive or unduly suspicious person." *United States v. Holland*, 519 F.3d 909, 914 (9th Cir. 2008) (quoting *Clemens v. U.S. Dist. Court for Cent. Dist. of California,* 428 F.3d 1175, 1178 (9th Cir. 2005)). "Disqualification under § 455(a) is necessarily fact-driven and may turn on subtleties in the particular case." *Carey*, 929 F.3d at 1104 (quoting *Holland*, 519 F.3d at 913).

### B. Application

The Motion states that the undersigned judge's "impartiality might reasonably be questioned based on the prior relationship between Judge Liburdi and Grand Canyon University." (Doc. 13 at 1.) It goes on to say that from 2014 "to the time that Judge Liburdi was nominated for the Court in 2018, Judge Liburdi has been 'tied at the hip' with [Arizona] Governor [Douglas] Ducey who, in turn, has been 'tied at the hip' with Defendants."[3] (*Id.*) To support this conclusion, the Motion cites as "facts" many generalized statements drawn from news reports,[4] public documents, and Plaintiffs' and

---

[3] Neither Arizona Governor Douglas A. Ducey, nor the State of Arizona, nor any other government officer are parties to this lawsuit. The Complaint (Doc. 1) does not claim that the Governor or any other government official had a role in the facts of this case.

[4] "The decision whether a judge's impartiality can 'reasonably be questioned' is to be made in light of the facts as they existed, and not as they were surmised or reported." *Cheney v.*

their lawyers' own imaginations. When viewed from the perspective of a reasonable person with knowledge of all the facts, the Motion plainly lacks any merit.

### 1. Former Government Lawyer

Section 455(b)(3) provides the standard by which a former government lawyer serving as a judge should recuse from a matter.[5] Recusal is appropriate when a judge "has served in governmental employment and in such capacity participated as counsel, adviser or material witness concerning the proceeding or expressed an opinion concerning the merits of the particular case in controversy." 28 U.S.C. § 455(b)(3). This recusal element was considered by then-Judge Kavanaugh of the D.C. Circuit in *Baker & Hostetler LLP v. United States Dep't of Commerce*, 471 F.3d 1355 (D.C. Cir. 2006). That case involved litigation under the Freedom of Information Act concerning public records in a softwood lumber dispute between the United States and Canada. *Id.* at 1357. On appeal, one of the parties moved for Judge Kavanaugh's recusal, citing concerns that, during his time as legal counsel for President George W. Bush, he may have "personally participated on issues relating to the *Softwood Lumber* dispute." *Id.* Judge Kavanaugh's analysis is worth reproducing in full:

> Before enacting that law in 1974, Congress carefully studied the issue, including obtaining guidance from the then-recently amended ABA Code of Judicial Conduct. *See* H.R.Rep. No. 93–1453 (1974), *as reprinted in* 1974 U.S.C.C.A.N. 6351. In the statute, Congress chose to draw the recusal line for prior government employment at participation in the proceeding or expression of an opinion concerning the merits of the particular case in controversy. It bears emphasis, moreover, that

---

*U.S. Dist. Court for D.C.*, 541 U.S. 913, 914 (2004) (internal citation omitted). *See also Clemens*, 428 F.3d at 1179 ("[R]eporters' personal opinions or characterizations appearing in the media, media notoriety, and reports in the media purporting to be factual, . . . but which are in fact false or materially inaccurate or misleading" are insufficient to require § 455 recusal.) (citing *Nichols v. Alley*, 71 F.3d 347, 351 (10th Cir. 1995)).

[5] *See United States v. Lara-Unzueta*, 735 F.3d 954 (7th Cir. 2013), where, in an illegal reentry case, the Seventh Circuit held that an immigration judge was not disqualified in deportation proceeding where the defendant's original deportation proceedings occurred while the judge was serving as district counsel for Immigration and Nationality Service. *Id.* at 949. The court applied the text of § 455(b)(3) and because the judge did not participate as counsel "in *the proceeding*," his prior employment did not trigger the statute's recusal mandate. *Id.* The court noted that "[t]he proceeding means the current proceeding." *Id.*

- 4 -

> Congress chose the "personal-participation" rule for recusal based on prior *government* employment while simultaneously enacting a different and far broader "associational" rule for recusal based on prior *law firm* employment. *See* 28 U.S.C. § 455(b)(2).
>
> As to prior *government* work, Congress was aware of the deeply rooted tradition of high-level Executive Branch and Legislative Branch officials assuming the bench. Based on that history and to avoid making it all but impossible for judges with such backgrounds to perform their judicial duties in many cases, Congress established the specific "personal-participation" rule in § 455(b)(3). In determining whether recusal is appropriate or inappropriate based on prior government employment, judges must respect the line drawn by Congress.

*Id*. a 1357-58.

Judge Kavanaugh explained that, during his time as an executive branch lawyer, he "did not participate in any stage of this Baker Hostetler litigation, nor did [he] express an opinion concerning the merits." *Id*. at 1357. The Judge said, moreover, that "[w]hile serving in the Executive Branch, [he] did not obtain personal knowledge of any disputed evidentiary facts in this FOIA case." *Id*. Judge Kavanaugh declined to recuse from the case. *Id*. at 1358.

Here, the first iteration of this case was filed in the Georgia state court system on March 7, 2019. The undersigned Judge had departed from the Governor's Office by that time. The first time that this Judge learned about the facts giving rise to this case and the legal claims advanced by Plaintiffs was after the Complaint was filed in this Court on September 18, 2019. (Doc. 1.) To be clear, therefore, while serving as General Counsel for the Arizona Governor, this Judge did not participate in any stage of this litigation, including its first iteration in Georgia. Nor did this Judge obtain personal knowledge of any disputed evidentiary facts. This Judge has not, at any time, expressed an opinion concerning the merits of this litigation. The Motion does not cite any fact to the contrary. Recusal as a former government lawyer is, therefore, not required.

///

### 2. *Lawyer Formerly in Private Practice*

For similar reasons, recusal is not required under 28 U.S.C. § 455(b)(2), which addresses a judge who was formerly in private practice. Under § 455(b)(2), a judge must recuse from a case "[w]here in private practice he served as a lawyer in the matter in controversy, or a lawyer with whom he previously practiced law served during such association as a lawyer concerning the matter, or the judge or such lawyer has been a material witness concerning it." The Motion draws upon this Judge's former representation of Governor Ducey as his campaign and transition counsel. But those facts, standing alone, are not a reason for disqualification.

The statute requires recusal where the judge or an associated lawyer has had direct involvement "as a lawyer in the matter in controversy." 28 U.S.C. § 455(b)(2). This Judge did not serve as a lawyer on this matter; to the best of the undersigned's recollection, no lawyer with whom this Judge was associated served in such a capacity; nor did this Judge or any associated lawyer serve as a material witness concerning the matter in controversy. As previously explained, this Judge had no knowledge of this litigation or its underlying claims until after it was filed and randomly assigned. The Motion does not and cannot provide a single controverting fact.

### 3. *Personal Bias or Prejudice Concerning a Party*

The catch-all disqualification provision of § 455(a) provides that, "[a]ny justice, judge, or magistrate judge of the United States shall disqualify himself in any proceeding in which his impartiality might reasonably be questioned." The Motion attempts to state a reason why this Judge should recuse for actual or perceived bias under this section of § 455(a). Instead of advancing a colorable argument, the Motion attempts to weave together disparate facts that show a personal relationship among this Judge, Governor of Arizona, and the President of Grand Canyon University Brian Mueller. From these scattered facts Plaintiffs attempt to establish an actual bias or the appearance of bias by this Judge in favor of GCU. Plaintiffs have failed to do so under the reasonable person test.

To begin, the Motion claims that Defendants have provided "massive financial and

public relations support to Governor Ducey," while the undersigned served as the Governor's legal counsel, and that "Governor Ducey has returned the favors by making sure the state government works for the benefit of Grand Canyon University." (Doc. 13 at 1-2.) The Motion emphasizes this point by saying that "for several years before taking the bench, Judge Liburdi has been close professionally – and almost certainly personally – with Defendants and their senior executives." (*Id.* at 2.) It then points to certain occurrences involving the Governor and GCU representatives that the Motion believes either create a conflict of interest or the appearance thereof. These occurrences include, (1) that Governor Ducey and GCU President Mueller "were co-chairs of the board of the Arizona Commerce Authority"; (2) that Mr. Mueller was appointed to serve on the Arizona Cybersecurity Team; (3) that the Governor and Mr. Mueller spoke at public events together; and (4) that Mr. Mueller asked the Governor to intervene in an Arizona Nursing Board matter concerning GCU. (*Id.* at 2-4.)

Absent a single introductory meeting in either 2015 or 2016, this Judge has had no contact with Mr. Mueller for any purpose. To the best of this Judge's knowledge, this Judge has had no contact with any other representative of either of the Defendants for any purpose whatsoever. Indeed, the first time that this Judge learned about Mr. Mueller's position on the Arizona Commerce Authority and the Arizona Cybersecurity Team, to the extent that these claims are accurate, was after reading the Motion. The fact that Mr. Mueller and the Governor appeared together at public events is wholly irrelevant to this lawsuit. Plaintiffs do not even attempt to make an argument that those events have anything to do with the present controversy. Finally, that Mr. Mueller asked the Governor for assistance with an Arizona Nursing Board matter, assuming this is true, has nothing to do with the claims here. The insinuation attempted to be drawn is that this Judge will bestow a favorable reward on Mr. Mueller for his relationship with Governor Ducey. These arguments do nothing more than advance innuendo and rumormongering against the Court. Suffice it to say, this tactic fails the objective observer standard for disqualification.

The Motion next attempts to graft an appearance of bias on this Judge based on

certain financial contributions to the Governor's 2018 reelection committee and the 2014 transition committee. (Doc. 13 at 4.) The Motion cites re-election contributions made by Mr. Mueller and GCU Chief Financial Officer Dan Bachus, and a contribution made by GCU for the transition committee. (*Id.*) Accepting as accurate that these contributions were made, until the Motion was filed, this Judge had no personal knowledge of any of these contributions. The Motion does not assert a single fact that any contribution was made for an improper purpose. It does not assert a single fact that any promise of benefit was offered, exchanged, or understood. This is, instead, a continuation of Plaintiffs' rumormongering.

The Motion states that "Judge Liburdi is undoubtedly very close to, and is also professionally indebted to, Governor Ducey" and that "[i]t can certainly be reasonably inferred that Judge Liburdi owes his current position to the Governor." (*Id.* at 5.) The Motion draws upon this Judge's prior legal representations of the Governor and his appointment as General Counsel, to the Uniform Laws Commission, and the Arizona State Governing Committee for Deferred Compensation Plans. In accusing this Judge and the Governor of the State of Arizona of potentially engaging in illegal activity, this allegation assumes that the Governor took measures to secure this judicial appointment and that this Judge would someday return that favor in the form of a favorable outcome for GCU. This allegation is rather scandalous and there is not a single objective fact to support it.

A party seeking recusal must state particular facts underlying bias or the appearance of bias that would cause a reasonable person to arrive at such a conclusion. *See Clemens*, 428 F.3d at 1178 ("Rumor, speculation, beliefs, conclusions, innuendo, suspicion, opinion, and similar non-factual matters" are insufficient to require § 455 recusal) (citing *Nichols*, 71 F.3d at 351); *see also Yagman*, 987 F.2d at 626 (motion for recusal properly denied where allegations of bias were "nothing more than speculation" and attorney "pointed to no evidence"). The reasons proffered by Plaintiffs fall far short of the objective standard. The Motion instead engages in unrestrained speculation. Plaintiffs have failed to provide a colorable reason for any reasonable person to conclude that this Judge is biased in favor of Defendants based on his pre-judicial positions.

The Motion also speculates that "it is far-fetched to imagine that Judge Liburdi and Brian Mueller, for example, have not interacted on numerous occasions both professionally and socially." (Doc. 13 at 5.) This suggested reason for recusal is, indeed, far-fetched. *See Martinez v. Ryan*, 926 F.3d 1215, 1227 (9th Cir. 2019) (holding that a "fanciful theory of bias cannot overcome [the] presumption of honesty and integrity in those serving as adjudicators" (quoting *Withrow v. Larkin*, 421 U.S. 35, 47 (1975)) (internal quotation marks omitted)). As has already been explained, this Judge has had one limited introduction to Mr. Mueller which occurred years ago and years before this lawsuit was filed. It may surprise Plaintiffs and their lawyers to learn that this Judge, while representing Governor Ducey, did not attend every function concerning the Governor's Office. Nor did this Judge engage on every issue that may have been undertaken by the Governor's Office. To the best of this Judge's recollection, absent that one introductory meeting, there has never been any interaction with Mr. Mueller, either professionally or socially.

Accordingly, the Motion has not stated any reason why this Judge should disqualify himself under § 455(a).

### 4. Financial Interest

Section 455(b)(4) requires recusal where the judge "knows that he, individually or as a fiduciary, or his spouse. . . has a financial interest in the subject matter in controversy or in a party to the proceeding, or any other interest that could be substantially affected by the outcome of the proceeding."[6] An interest that is "not direct, but is remote, contingent or speculative" does not require recusal under 28 U.S.C. § 455(b)(4). *Nachshin v. AOL, LLC*, 663 F.3d 1034, 1042 (9th Cir. 2011) (internal citation omitted).

In a manner that is more Clouseau than Poirot, the Motion purports to reveal that, "in an uncanny coincidence, Judge Liburdi's wife is the General Counsel of a for-profit holding company that operates dozens of charter schools around the country, including over 20 in the State of Arizona." (Doc. 13 at 5.) This argument attempts to establish bias

---

[6] A "financial interest" is defined as "ownership of a legal or equitable interest, however small," or, with certain exceptions, "a relationship as director, adviser, or other active participant in the affairs of a party." 28 U.S.C. § 455(d)(2).

- 9 -

or the appearance of bias because, according to the Motion, this Judge has an actual or perceived familial financial interest in for-profit schools that rely on public funding. The Motion's implication of a financial connection between the Defendants' alleged misrepresentations concerning the number of credit hours required to obtain an online doctoral degree and a company that operates private K-12 schools is purely speculative.

This Judge's spouse works for a company that provides private (not public) K-12 school services that utilize the BASIS curriculum. To the best of this Judge's knowledge, none of these private schools are in Arizona, nor do they accept public funding. In fact, in April 2019, the private-school side of the operation was sold to Spring Education Group, an unrelated private school network. To the extent that the Motion intended to target the *private* K-12 schools, Plaintiffs have failed to allege any facts that this Judge's spouse works for any K-12 school, whether public or private, that charges families per credit hour. Nor have they alleged that the company is engaged in the sort of practices that they claim to have damaged them. These are key distinctions with Plaintiffs' claims in *this* case, all of which seem to have been ignored. Here, Plaintiffs claim to have paid too much money according to certain alleged promises and representations made by Defendants. Plaintiffs' proffered "uncanny coincidence" involving this Judge's spouse fails on its face because the best evidence of such a connection that they can offer is that "the pay of [BASIS's] for-profit executives has been questioned since they rely almost exclusively on public educational funds."[7] (Doc. 13 at 5.)

The Motion does not cite a single fact that gives rise to a familial financial advantage that this Judge has or would have under any resolution of this case, whether favorable or unfavorable to Plaintiffs. The reasons presented in the Motion consist of pure speculation, which do not form a legitimate basis for recusal. *Cf. In re Medtronic, Inc. Sprint Fidelis*

---

[7] The Motion also states (Doc. 13 at 10) that "Judge Liburdi's wife . . . has faced – as General Counsel for a for-profit educational holding company – some of the same issues faced by Grand Canyon University." The Motion does not identify any of the "issues" that this Judge's spouse "has faced" that are similar to those "issues faced by Grand Canyon University." A generalized statement such as this, lacking in any specificity whatsoever, fails to state a reason for judicial recusal.

*Leads Product Liability Litigation*, 601 F. Supp. 2d 1120, 1125-26 (D. Minn. 2009) (denying § 455(b)(5) recusal where judge's child was a shareholder in a company that conducted substantial business with the defendant; the court observed that the reasons proffered for recusal were "a hypothetical house of cards"). Given these facts, no reasonable person would infer that this Judge has a financial interest in the outcome of this case under § 455(b)(4).

### C. Conclusion on § 455 Recusal

Judges "are as bound to recuse ourselves when the law and facts require as we are to hear cases when there is no reasonable factual basis for recusal." *Holland*, 519 F.3d at 912. In this case, Plaintiffs have failed to satisfy their burden that "a reasonable person with knowledge of all the facts would conclude that the judge's impartiality might reasonably be questioned." *Carey*, 929 F.3d at 1104. Plaintiffs' Motion for Recusal under 28 U.S.C. § 455(a) is denied.

## III. RECUSAL PROCEDURE UNDER 28 U.S.C. § 144

Section 144 applies when a party to a proceeding believes that the district judge "has a personal bias or prejudice either against him or in favor of any adverse party[.]" 28 U.S.C. § 144. "Section 144 expressly conditions relief upon the filing of a timely and legally sufficient affidavit." *Sibla*, 624 F.2d at 867 (citations omitted). Specifically, the statute provides:

> The affidavit shall state the facts and the reasons for the belief that bias or prejudice exists, and shall be filed not less than ten days before the beginning of the term at which the proceeding is to be heard, or good cause shall be shown for failure to file it within such time. A party may file only one such affidavit in any case. It shall be accompanied by a certificate of counsel of record stating that it is made in good faith.

28 U.S.C. § 144.

When a party files a timely and legally sufficient affidavit pursuant to § 144, the district judge "shall proceed no further therein, but another judge shall be assigned to hear such proceeding." *Id.*; *Sibla*, 624 F.2d at 867. However, "if the motion and affidavit required by section 144 [are] not presented to the judge, no relief under section 144 is

available." *Sibla*, 624 F.2d at 868. Here, the Court finds the timeliness and procedural requirements of 28 U.S.C. § 144 have been met.

## IV. CONCLUSION

Accordingly,

**IT IS ORDERED** denying Plaintiffs' Motion for Recusal under 28 U.S.C. § 455 (part of Doc. 13);

**IT IS FURTHER ORDERED** directing the Clerk of the Court to randomly draw another District Court Judge to decide the portion of the motion to recuse (part of Doc. 13) filed pursuant to 28 U.S.C. § 144 and to refer only that portion of Doc. 13 to the randomly selected Judge.

**IT IS FINALLY ORDERED** that the following motions remain pending: Defendants' Motion to Dismiss (Doc. 8); Defendants' Motion to Compel Arbitration (Doc. 9); Plaintiffs' Motion to Defer Ruling on Defendants' Motion to Compel Arbitration (Doc. 15); the Motion to Withdraw as Plaintiffs' Attorneys by Jonathan A. Dessaules, David E. Wood, and Ashley C. Hill of the Dessaules Law Group (Doc. 18); and a Stipulation for Extension of Time to Respond/Reply (First Request) (Doc. 19).

Dated this 5th day of November, 2019.

Michael T. Liburdi
United States District Judge